EXHIBIT A

## SUMMONS

| | |
|---|---|
| **State of Minnesota** | **District Court** |
| **County of Hennepin** | **Fourth Judicial District** |

| | |
|---|---|
| Marilyn Williams, individually and on behalf of all others similarly situated, | Court File Number: _____<br>Case Type: Civil |
| Plaintiff, | **Summons** |
| vs. | |
| Total Life Changes, LLC | |
| Defendant. | |

THIS SUMMONS IS DIRECTED TO: Total Life Changes, LLC

    1. **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS**. You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

    Nichols Kaster, PLLP
    4700 IDS Center, 80 S. 8th St.
    Minneapolis, MN 55402

    3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

    4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to

tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

     **5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

     **6. ALTERNATIVE DISPUTE RESOLUTION.**    The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated:  November 5, 2020

                      **NICHOLS KASTER, PLLP**

                      Matthew H. Morgan, MN Bar No. 304657
                      Chloe A. Raimey, MN Bar No. 0398257
                      4700 IDS Center
                      80 South Eighth Street
                      Minneapolis, Minnesota 55402
                      Tel: (612) 256-3200
                      Fax: (612) 338-4878
                      morgan@nka.com
                      craimey@nka.com

                      ATTORNEYS FOR PLAINTIFF

STATE OF MINNESOTA                                          DISTRICT COURT

COUNTY OF HENNEPIN                              FOURTH JUDICIAL DISTRICT
                                                    CASE TYPE: CIVIL OTHER

---

Marilyn Williams, individually
and on behalf of all others similarly situated,        Court File No. _____

       Plaintiff,

v.                                                     **CLASS ACTION COMPLAINT**
                                                       **(JURY TRIAL DEMANDED)**

Total Life Changes, LLC

       Defendant.

---

      Plaintiff, Marilyn Williams, on behalf of herself and all others similarly situated, by and through her undersigned counsel, brings this action for damages and other legal and equitable relief against Defendant Total Life Changes, LLC. Plaintiff states the following for her claims against Defendant:

## INTRODUCTION

      1.    Plaintiff files this class action on behalf of herself and the Proposed Class (as defined below) who were misled into purchasing Defendant's Raspberry Lemonade Flavor Iaso Tea Instant product ("Raspberry Lemonade Instant Tea" or "the Tea") due to Defendant's false and misleading advertising as described herein.

      2.    Defendant represented (and continues to represent) through product packaging, product literature, Defendant's retail website, and statements by Defendant's representatives, that Defendant's Raspberry Lemonade Instant Tea does not contain Tetrahydrocannabinol ("THC") when in fact the product does contain THC.

3.     THC is "the primary psychoactive component in marijuana, hashish, and other preparations derived from cannabis plants."[1]

4.     Plaintiff and the Proposed Class would not have purchased Defendant's Raspberry Lemonade Instant Tea had they known that the representations made by Defendant regarding the amounts of THC in the product were false, deceptive and/or misleading.

5.     Plaintiff saw, read, and relied on Defendant's representations regarding the Raspberry Lemonade Instant Tea's THC levels, and ultimately decided to purchase the Tea.

6.     After purchasing and consuming the Tea, Plaintiff failed her employer drug test and was terminated after the test came back positive for THC.

7.     Defendant's representations that its Raspberry Lemonade Instant Tea does not contain THC are false.

8.     Plaintiff brings this action to remedy Defendant's unlawful practices.

## PARTIES

9.     Plaintiff Marilyn Williams is a natural person presently residing in Alabama.

10.     Plaintiff previously resided in Minnesota from June 2, 2019 until September 14, 2020. From April 25, 2020, until September 14, 2020, Plaintiff resided in Plymouth, Minnesota, which is located in Hennepin County. It was during Plaintiff's residency in Plymouth that she purchased and was injured by Defendant's product as further described below.

11.     Defendant Total Life Changes, LLC, is a Michigan limited liability company with a registered mailing address of 6094 Corporate Drive, Fair Haven, Michigan.

12.     Jack Fallon is Defendant's sole member.

---

[1] *THC*, Dictionary.com, https://www.dictionary.com/browse/thc (last visited on October 23, 2020).

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to Minn. Stat. § 484.01.

14.     This Court has jurisdiction over Defendant pursuant to Minn. Stat. § 543.19 because Defendant transacts business within this state and has caused injury within this state.

15.     Venue is proper in this Court because a substantial part of the events at issue in this lawsuit took place in Plymouth, Minnesota, which is located in Hennepin County and the Fourth Judicial District.

## FACTUAL ALLEGATIONS

### *Defendant's Background*

16.     Defendant is a top 100 global direct selling company.[2]

17.     Defendant develops, markets, distributes, and/or sells products including vitamins, weight loss supplements, teas, essential oils, and skin care products.[3]

18.     According to Defendant's website, over 2,500,000 people have used their products.[4]

19.     Defendant serves customers worldwide, including customers in the state of Minnesota.

20.     Defendant sells products through its retail website and through its business representatives called "Life Changers."[5]

21.     A "Life Changer" sells Defendant's products to new retail customers while earning a fifty-percent retail bonus on each product sold.[6]

---

[2] Total Life Changes, *Become A Member*, https://retail.totallifechanges.com/6925551/enrollment (last visited on October 23, 2020).
[3] Total Life Changes, *About TLC*, https://totallifechanges.com/about-us/ (last visited on October 23, 2020).
[4] Id.
[5] Total Life Changes, *Become A Member*, *supra* at n.2.

22.    Life Changers may achieve various rank levels including: Affiliate, Associate, Apprentice, Director, Rising Star, Executive Director, Regional Director, National Director, Global Director, Ambassador, and Executive Ambassador.

23.    In order to apply to be a Life Changer, one must agree to and execute an agreement with Defendant containing specific terms and conditions.[7]

24.    Defendant generates a monthly report called a "Downline Activity Report" that contains the identities of Life Changers as well as the customers, sales information, and enrollment activity of each Life Changer's marketing organization.[8]

25.    Defendant maintains that the Downline Activity Reports and the information contained therein are owned exclusively by TLC.[9]

26.    Defendant's Life Changers act as agents of Defendant.

27.    During the times and places at issue in this complaint, Life Changers were acting (and continue to act) on behalf of Defendant.

***Defendant's Prior Issues with Product Quality***

28.    Defendant received a warning letter from the Federal Trade Commission ("FTC") on or about April 24, 2020, regarding in part social media posts made by Defendant's "business participants or representatives that unlawfully advertise that certain products treat or prevent Coronavirus Disease 2019 (COVID-19)[.]"[10]

---

[6] Id.
[7] Total Life Changes, *United States Policies and Procedures* (July 2019), https://totallifechanges.com/wp-content/uploads/2019/09/TLC_TC_PP_ENGLISH.pdf (last visited on October 23, 2020).
[8] *See* id. at Sections 6, 15.
[9] Id. at Section 6.1.
[10] Federal Trade Commission, *Warning Letter to Total Life Changes, LLC*, https://www.ftc.gov/enforcement/warning-letters/warning-letter-total-life-changes-llc (last visited on October 23, 2020).

29.    Notably, the FTC stated in part:

> *You are responsible for the claims of your business opportunity participants and representatives*. As the FTC stated in the January 2019 Business Guidance Concerning Multi Level Marketing, the compensation structure of a Multi-Level Marketing entity ("MLM") may create incentives for its participants to make certain representations to current or prospective participants. 'As a consequence, an MLM should (i*) direct its participants not to make false, misleading, or unsubstantiated representations and (ii) monitor its participants so they don't make false, misleading, or unsubstantiated representation*s.'[11]

30.    Additionally, in or about May 2020, Defendant was sued by the Environmental Research Center, Inc. ("ERC"), a California non-profit organization.

31.    Specifically, the ERC alleged Defendant exposed consumers to lead in the State of California through certain of Defendant's products in violation of Proposition 65.  *See* Environmental Research Centers, Inc. v. Total Life Changes, LLC et al., No. RG20060596 (California Superior Court, 2020).

32.    Notably, the ERC had previously sued Defendant for alleged violations of Proposition 65 in 2016 for failing to warn consumers of lead in some of Defendant's products. *See* Environmental Research Centers, Inc. v. Total Life Changes, LLC et al., No. RG16826366 (California Superior Court, 2016).

***Defendant Falsely Advertises that the Tea Does Not Contain THC***

33.    Defendant distributes its Raspberry Lemonade Instant Tea product. A sample of the product as provided on Defendant's website is as follows:[12]

---

[11] Id. at 3 (emphasis added).

[12] Total Life Changes, *Raspberry - Instant Tea With Broad-Spectrum Hemp Extract - 25 Sachets*, https://retail.totallifechanges.com/6925551/shopping/itemdetails?itemCode=1603 (last visited on October 23, 2020).



34.    Defendant sells its Raspberry Lemonade Instant Tea for $59.95 per package as stated on Defendant's website.

35.    The front of the packaging states "0.0% THC."

36.    Defendant further provides a "100% Authentic Guaranteed" badge on its website as illustrated in paragraph 33.

37.    Defendant's website description for the Tea provides in part: "This proprietary formula is powered by 100mg of organic Broad Spectrum Hemp Extract with 0% laboratory certified THC content . . ."

38.    Based on Defendant's representations as described herein, it is reasonable for a consumer to believe that the Tea does not contain THC.

39.    Defendant's representations, however, are false because Defendant's Raspberry Lemonade Instant Tea does in fact contain THC.

***Plaintiff Fails Drug Test After Consuming Defendant's Product***

40.    In June 2020, Plaintiff began corresponding with Emily Roberts, a Regional Director for TLC.

41.    Plaintiff told Ms. Roberts that her job conducted random drug tests and, accordingly, Plaintiff wanted a product that would not cause her to fail a drug test.

42.    Ms. Roberts recommended that Plaintiff purchase Defendant's brewed tea or the Raspberry Lemonade Instant Tea since "there is no [THC] in raspberry."

43.    Plaintiff ultimately purchased from Ms. Roberts one bag of the Raspberry Lemonade Instant Tea and one box containing two other products, Resolution Drops and Life Drops ("Drops").[13]

44.    Plaintiff paid approximately $115 to Ms. Roberts for these products.

45.    Plaintiff received the Tea and the Drops on or about July 12, 2020.

46.    When Plaintiff received Defendant's products in the mail, the Raspberry Lemonade Instant Tea stated on the front of the package "0.0% THC," as demonstrated below:



---

[13] The Resolution Drops and Life Drops are not at issue in this case.

47.     The back of the bag states, "[t]his proprietary formula is powered by 100 mg of organic Broad-Spectrum Hemp Extract with 0% laboratory certified THC content . . ." as illustrated below:



48.     Plaintiff relied on Defendant's representations that the Tea contained 0.0% THC and began consuming the product daily on or about July 12, 2020.

49.     On or about July 15, 2020, Plaintiff's employer subjected her to a random drug test.

50.     Thereafter, Plaintiff's employer told her that she failed the drug test because it came back positive for THC.

51.     Thereafter, on or about July 20, 2020, Plaintiff contacted Defendant's representative, Ms. Roberts, and told her that she needed to know what was in the Raspberry Lemonade Instant Tea because her employer drug test came back positive for THC.

52.     Plaintiff reiterated to Ms. Roberts that she had a career she could lose because of the test results.

53.     Ms. Roberts told Plaintiff that while Defendant's lemon-flavored instant tea has THC, the Raspberry Lemonade Instant Tea does not.

54.     Ms. Roberts further confirmed that she had only sent Defendant's Raspberry Lemonade Instant Tea to Plaintiff.

55.     Plaintiff asked Ms. Roberts if the Drops had THC and Ms. Roberts told Plaintiff there was no THC in the Drops either.

56.     Ms. Roberts sent Plaintiff the ingredients for the Resolution Drops and the Raspberry Lemonade Instant Tea.[14]

57.     The ingredient list for the Raspberry Lemonade Instant Tea that Ms. Roberts provided to Plaintiff states in part that the product is "THC Free" and that "100% of the THC is removed…"

58.     By way of example, a portion of ingredient list is included below:



**All-natural Detox & Cleanse with Broad-Spectrum Hemp Extract**

Enjoy the detox benefits of the original Iaso® Tea in an all-natural instant formula. This proprietary formula is powered by 100mg of organic Broad-Spectrum Hemp Extract with 0% laboratory certified THC content, over 100 phytonutrients, and over 12.5 mg of CBD per serving.** It is also equipped with several more incredible extracts combined with Nutriose® FM06 (a soluble dextrin fiber) to help suppress your appetite. Popular benefits of this cleansing formula include improved mood, weight loss & weight management, a boost in energy, mental clarity, improved skin, and gentle cleansing of your intestines and internal organs.*

**Active Ingredients**

**Broad-Spectrum Hemp Extract**
When the hemp is processed, the entire plant is utilized like full-spectrum hemp, but the key difference is 100% of the THC is removed, which constitutes the Broad-Spectrum extract. This means you won't have to worry if your occupation requires regular drug-screening tests. Our hemp is laboratory tested, certified for quality, and contains 0% THC.

**Beta Vulgaris Extract**
Beta Vulgaris extract is derived from beetroot. Beetroot is a superfood that contains significant amounts of vitamin c, vitamin a, folate, magnesium, and phosphorus. It is also rich in fiber, which is key to maintaining digestive regularity.

**Matricaria Chamomilla Extract**
This extract is derived from the flowering head of the annual plant. It has been used in herbal medicine to treat stomach pain and aid with sleep

**Best Used With**

**ProZ** provides a gentle detoxing, healthier digestion, and improved sleep. *

**Stem Sense** cellular derived complex supports muscle inflammation and joint repair.*

**NutraBurst®** liquid multivitamin dietary supplement replenishes vital nutrients and minerals.*

---

[14] Ms. Roberts did not provide the ingredients for the Life Drops product.

59.    The product literature further states, "[t]his means you won't have to worry if your occupation requires regular drug-screening test."

60.    Ms. Roberts assured Plaintiff that that Defendant has "military and fire and cops" as well as "government" and "health care workers" who have used the product and that there had been "no issues" with positive drug tests.

61.    Plaintiff was ultimately terminated by her employer on or about July 20, 2020, for failing her drug test.

62.    The last time Plaintiff consumed the Raspberry Lemonade Instant Tea was on or about July 19, 2020.

63.    After being terminated, Plaintiff purchased an at-home marijuana drug test kit.

64.    Plaintiff tested a serving of the Raspberry Lemonade Instant Tea and the results came back positive for THC.

65.    Plaintiff also tested both the Resolution Drops and the Life Drops with the same brand of at-home marijuana drug test kit; neither of the Drops products tested positive for THC.

66.    On or about August 9, 2020, Plaintiff purchased a sample pack of the Raspberry Lemonade Instant Tea from Defendant.

67.    Plaintiff tested a serving of the Tea from the second package with the same brand of at-home marijuana drug test kit.

68.    Again, the Raspberry Lemonade Instant Tea from Defendant tested positive for THC.

69.    Defendant's representations that its Raspberry Lemonade Instant Tea product does not contain THC was (and continues to be) false and misleading to Plaintiff and others similarly situated.

10

70.     Plaintiff and other Class Members suffered actual damages as a result of the advertisements and misrepresentations made by Defendant.

## CLASS ALLEGATIONS

71.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Minnesota Rules of Civil Procedure.

72.     Plaintiff seeks to represent the following Classes:

> All persons who within the last six years of the filing of this complaint: (1) purchased Raspberry Lemonade Flavored Iaso Tea Instant from Defendant or Defendant's Life Changers; (2) while residing in Minnesota; (3) for personal use and not for resale.

73.     Excluded from the Proposed Class is Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; any individual who worked as a Life Changer for Defendant; any judge to whom this case is assigned and his or her spouse; and members of the judge's staff and their spouses.

74.     This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Minnesota Rule of Civil Procedure 23.

75.     Members of the putative Class are so numerous that joinder is impracticable. Although the precise number of putative Class Members is currently unknown, Plaintiff believes that the Class as defined above include over 40 members. These members can be identified based on Defendant's records.

76.     There are questions of law and fact common among the putative Class, including:

a.  Whether Defendant made false or misleading representations in the advertising and/or packaging of its Raspberry Lemonade Instant Tea;

b.  Whether Defendant knew or should have known that the THC content of the Tea was false;

11

c. Whether Defendant deceived Plaintiff and the Proposed Class, who reasonably relied on them in making their purchase decisions;

d. Whether Defendant's conduct violates the Minnesota Consumer Fraud Act;

e. Whether Defendant's conduct violates the Minnesota Unlawful Trade Practices Act;

f. Whether Defendant's conduct violates the Minnesota False Statements in Advertising Act;

g. The proper equitable and injunctive relief;

h. The proper amount of actual or compensatory damages;

i. The proper amount of restitution or disgorgement;

j. The proper amount of punitive damages, and;

k. The proper amount of reasonable attorneys' fees and costs.

77.    Plaintiff's claims are typical of those of the putative Class. Plaintiff and the Proposed Class have suffered injuries-in-fact and have lost money as a result of Defendant's false representations. Indeed, Plaintiff purchased Defendant's Raspberry Lemonade Instant Tea under the belief that it did not contain THC. Plaintiff relied on Defendant's statements, packaging, labeling, and marketing and would not have purchased the product if she had known it did in fact contain THC.

78.    Plaintiff will fairly and adequately protect the interests of the Proposed Class. Plaintiff is committed to the prosecution of this action and has retained counsel that numerous courts have found sufficiently experienced in class actions to be appointed as class counsel. There are no conflicts between Plaintiff and the Proposed Class she seeks to represent.

79.    This action is maintainable as a class action under Minn. R. Civ. P. 23.02 because Defendant has acted or refused to act on grounds generally applicable to the Proposed Class, thus making injunctive relief and corresponding declaratory relief appropriate with respect to the Classes as a whole.

12

80.    This action is also maintainable as a class action under Minn. R. Civ. P. 23.02 because questions of law and fact common to the putative Proposed Class predominate over any questions affecting only individual members of the Proposed Class and because a class action is superior to other methods for the fair and efficient adjudication of this action. Though each Proposed Class Member's injury is meaningful on an individual basis, those injuries are not of such magnitude as to make the prosecution of individual actions economically feasible. Further, this class action will not present unreasonable manageability difficulties.

81.    Plaintiff intends to request to send notice to all members of the Proposed Class to the extent required by Rule 23.03. The names and addresses of the Proposed Class Members are readily available from Defendant's business records.

## CAUSES OF ACTION

### COUNT I

**MINNESOTA CONSUMER FRAUD ACT,**
**MINN. STAT. § 325F.68,** *et seq.*
(On behalf of Plaintiff and all Class Members)

82.    Plaintiff incorporates the paragraphs above by reference as if fully set forth herein.

83.    Minn. Stat. § 325F.69, subd. 1 provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

84.    Defendant engaged in and continues to engage in fraud, misrepresentations, false promises, and misleading statements as set forth above.

85.    Defendant engaged in such representations with the intent that the Plaintiff and

13

the Proposed Class would rely on such misrepresentations and false promises in connection with the purchase of the Raspberry Lemonade Instant Tea from Defendant, and with the intention that they would purchase said product.

86.     Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff and the Proposed Class may pursue a private cause of action based on Defendant's violation of §§ 325F.68 *et seq*.

87.     The vindication of Plaintiff's claims and the claims of the Proposed Class will benefit the public at large. Defendant's advertisements were and continue to be broadly and publicly disseminated on the Internet, on the product packaging, and through Defendant's agent multi-level marketers. There is significant public interest in ensuring that Defendant is accurately advertising the contents of its product to the public. The interests of Minnesota consumers are implicated in this action.

88.     Plaintiff and members of the Class were injured by Defendant's unlawful actions and are therefore entitled to relief as set forth below.

## COUNT II

### MINNESOTA UNLAWFUL TRADE PRACTICE ACT
### MINN. STAT. § 325D.09, *et seq*.
(On behalf of Plaintiff and all Class Members)

89.     Plaintiff incorporates the paragraphs above by reference as if fully set forth herein.

90.     Minn. Stat. § 325D.13, subd. 1, provides, in relevant part:

> No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise.

91.     Defendant knowingly misrepresented the true ingredients of their Raspberry Lemonade Instant Tea in connection with the sale of that merchandise.

92.    Specifically, Defendant states on its website, product packaging, marketing literature, and through business representatives that its Raspberry Lemonade Instant Tea does not contain THC when in fact, it does.

93.    Defendant's misrepresentations had the tendency or capacity to deceive or mislead (and in fact did deceive and mislead) Plaintiff and members of the Proposed Class.

94.    Defendant's misrepresentations were material because they related to facts that would naturally affect the purchaser's decision to purchase the product at issue and that a reasonable person, including Plaintiff and members of the Proposed Class, would have considered important in deciding whether to purchase Defendant's Raspberry Lemonade Instant Tea.

95.    Pursuant to Minn. Stat. Minn. Stat. § 8.31, subd. 3a, Plaintiff and the Proposed Class may pursue a private cause of action based on Defendant's violation of §§ 325D.09 *et seq*.

96.    The vindication of Plaintiff's claims and the claims of the Proposed Class will benefit the public at large. Defendant's advertisements were and continue to be broadly and publicly disseminated on the Internet, on the product packaging, and through Defendant's agent multi-level marketers. There is significant public interest in ensuring that Defendant is accurately advertising the contents of its product to the public. The interests of Minnesota consumers are implicated in this action.

97.    Plaintiff and the Proposed Class were injured by Defendant's unlawful actions and are therefore entitled to relief as set forth below.

## COUNT III

### MINNESOTA FALSE STATEMENTS IN ADVERTISING ACT
### MINN. STAT. § 325F.67
(On behalf of Plaintiff and all Class Members)

98.    The above paragraphs are incorporated by reference as if fully set forth herein.

99.    Minn. Stat. § 325F.67 provides in relevant part:

Any person, firm, corporation, or association who, with intent to sell or in anywise dispose of merchandise, securities, service, or anything offered by such person, firm, corporation, or association, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or any interest therein, makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

100.    Defendant violated Minn. Stat. § 325F.67 by publicly misrepresenting the amount of THC in its Raspberry Lemonade Instant Tea is zero when in fact, it does contain THC.

101.    Defendant made false representations and untrue statements about the THC content of its Raspberry Lemonade Instant Tea on its website, product packaging, marketing literature, and through representations made by its business representatives.

102.    Defendant's misrepresentations were material because they related to facts that would naturally affect the purchaser's decision to purchase the product at issue and that a reasonable person, including Plaintiff and members of the Proposed Class, would have

considered important in deciding whether to purchase Defendant's Raspberry Lemonade Instant Tea.

103.    Pursuant to Minn. Stat. Minn. Stat. § 8.31, subd. 3a, Plaintiff and the Proposed Class may pursue a private cause of action based on Defendant's violation of § 325F.67.

104.    The vindication of Plaintiff's claims and the claims of the Proposed Class will benefit the public at large. There is a significant public interest in discouraging false, deceptive and misleading advertising. Defendant broadly and publicly disseminates its advertising on the Internet, making it likely that thousands more Minnesota residents will fall victim to Defendant's deceptive and misleading advertising.

105.    Plaintiff and the Proposed Class have suffered damages and monetary loss as a result of Defendant's false, deceptive and misleading advertising.

106.    Plaintiff and the Proposed Class were injured by Defendant's unlawful actions and are therefore entitled to relief as set forth below.

## COUNT IV

### UNJUST ENRICHMENT
(On behalf of Plaintiff and all Class Members)

107.    The above paragraphs are incorporated by reference as if fully set forth herein.

108.    Defendant's false statements and misrepresentations about the amount of THC in its Raspberry Lemonade Instant Tea caused Defendant to be unjustly enriched at the expense of Plaintiff and the Proposed Class Members.

109.    Defendant used various forms of advertainments including the product packaging, Defendant's website, Defendant's marketing literature, and statements by its representatives that deceptively mispresented the amount of THC in its Raspberry Lemonade Instant Tea.

110.    These advertisements were disseminated for the purposes of causing Plaintiff and

members of the Proposed Class to purchase the Tea.

      111.    As a result of the conduct described above, Defendant has been and continues to be unjustly enriched at the expense of Minnesota consumers, including Plaintiff and the Proposed Class.

      112.    It would be inequitable for Defendant to retain profits, benefits, and other compensation from the practices alleged herein. Thus, Plaintiff and the Proposed Class are entitled to restitution and other appropriate relief.

## **JURY DEMAND**

      113.    Plaintiff and the Proposed Class request a trial by jury.

18

## PRAYER FOR RELIEF

Wherefore, Plaintiff, individually and on behalf of the Proposed Class, pray for the following relief:

    A. Certification of the proposed Class pursuant to Rule of Civil Procedure 23;

    B. Appointment of Plaintiff as Class Representative for the Class;

    C. Appointment of Plaintiff's counsel as Class Counsel;

    D. A declaration that Defendant violated each of the laws that form the basis of relief;

    E. Monetary damages;

    F. Restitution;

    G. Penalties as provided by law;

    H. A permanent injunction enjoining Defendant from continuing the unlawful, unjust, unfair, and deceptive acts and practices described herein;

    I. Pre-judgment and post-judgment interest;

    J. Leave to amend the pleadings to add a claim for punitive damages;

    K. Reasonable attorneys' fees and expenses, Minn. Stat. § 8.31, subd.3a; and

    L. Such other further relief that the Court deems just and equitable.

Dated: November 5, 2020        **NICHOLS KASTER, PLLP**

                                   /s/ Matthew H. Morgan
                                   Matthew H. Morgan, MN Bar No. 304657
                                   Chloe Raimey, MN Bar No. 0398257
                                   4700 IDS Center
                                   80 South Eighth Street
                                   Minneapolis, MN 55402
                                   Tel.: 612.256.3200
                                   Fax: 612.338.4878
                                   morgan@nka.com
                                   craimey@nka.com

David Fish*
The Fish Law Firm, P.C.
200 E. 5th Avenue, Suite 123
Naperville, IL 60563
(630) 355-7590 Direct
(630) 778-0400 Facsimile
dfish@fishlawfirm.com

Aaron Rapier*
Rapier Law Firm
1770 Park St., Suite 200
Naperville, IL 60563
T: (815) 782-5478
F: (815) 327-3449
arapier@rapierlawfirm.com

*Pro Hac Forthcoming*

ATTORNEYS FOR PLAINTIFFS

## ACKNOWLEDGMENT REQUIRED BY
## MINN. STAT. § 549.211

I hereby acknowledge that, pursuant to Minn. Stat. § 549.211, costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find I acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings, or to harass, or committed a fraud upon, the Court.

/s/ Matthew H. Morgan
Matthew H. Morgan

# Nichols Kaster
## ATTORNEYS AT LAW

**Matthew H. Morgan**
Direct: (612) 256-3243
Fax: (612) 338-4878
morgan@nka.com

4700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(877) 448-0492

November 5, 2020

**VIA PERSONAL SERVICE**
Jack T. Fallon
Total Life Changes, LLC
6094 CORPORATE DRIVE
FAIR HAVEN, MI 48023

RE:    *Williams v. Total Life Changes, LLC*

Dear Mr. Fallon,

Enclosed and served upon you please find:

1.    Summons; and
2.    Complaint.

You are further on notice that you have a duty to preserve all documents, including electronically stored information ("ESI"), potentially relevant to this litigation. *See* Minn. R. Civ. P. 37.05. This includes information maintained within your computer systems, recorded materials, removable electronic media, mobile devices, or anywhere else ESI or physical documents are stored or archived, including with third parties.

At this early stage, we anticipate at least the following types of documents will be important in this litigation:

— Communications including but not limited to customer service logs and complaints, emails, instant messages and chats, whether company-supported or otherwise utilized by employees and business associates for work, pertaining to the product(s) at issue or Plaintiff and members of the putative Class;

— Marketing materials for the product(s) at issue including but not limited to print and digital advertisements and brochures, website and social media content, product packaging, and marketing data;

— Materials relating to the contents of Total Life Changes products, including THC test results and related communications, communications to or from regulatory authorities regarding THC content, and other internal and external communications and documentation related to THC content; and

– Purchase records pertaining to all aspects of sales of the product(s) at issue to Plaintiff and members of the putative Class including but not limited to customer names, product purchased, date of purchase, and cost of purchase.

With respect to ESI, we request you preserve it in its native form in a manner that does not in any way remove or degrade metadata, searchability, redlines, underlining formulas, or that otherwise makes it difficult or burdensome to access or use efficiently in litigation.[1] You should likewise refrain from actions that shift ESI from reasonably accessible media to less accessible media.

You must act immediately to preserve potentially relevant ESI. Adequate preservation of ESI requires more than simply refraining from efforts to intentionally destroy or dispose of it. Devices can be lost or accidentally damaged. Sources of ESI are altered and erased by continued use. Continued use of databases in business may irretrievably alter or destroy relevant evidence. You must intervene to prevent loss due to routine operations and employ proper protocols to protect ESI until final resolution of this matter, including discontinuing automatic email deletion, backup tape recycling, and hardware or data storage disposal. If you question whether your contemplated preservation method is sufficient to prevent the spoliation of evidence, please contact us to discuss.

Finally, we intend to discuss electronic discovery issues with you at the parties' Rule 26.06 conference as required by the Minnesota Rules of Civil Procedure. To help facilitate a meaningful discussion, I have attached an Exhibit to this letter that identifies the formats we will request for production of various types of ESI and other documents, including the manner in which we will request that the metadata associated with such documents be produced.

Thank you for your cooperation and attention to this matter.

Sincerely,

**NICHOLS KASTER, PLLP**

Matthew H. Morgan

Encls.

---

[1] With respect to servers like those used to manage electronic mail or network storage, the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of server and web-based email accounts. If you are questioning whether the preservation methods you are pursuing would be acceptable to us, please contact us to discuss.