# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

MARILYN WILLIAMS, individually
and on behalf of all others similarly situated,

        Plaintiff,

v.                        **MEMORANDUM OF LAW & ORDER**
                           Civil File No. 20-2463 (MJD/HB)

TOTAL LIFE CHANGES, LLC,

        Defendant.

Chloe A. Raimey, Matthew H. Morgan, and Anna P. Prakash, Nichols Kaster PLLP; Aaron W. Rapier, Rapier Law Firm; and David Fish, The Fish Law Firm, P.C.; Counsel for Plaintiff.

Lauri Anne Mazzuchetti and Glenn Timothy Graham, Kelley Drye & Warren, LLP; and Kristina Kaluza, Dykema Gossett PLLC, Counsel for Defendant.

## I. INTRODUCTION

This matter is before the Court on Defendant Total Life Changes, LLC's Motion to Dismiss the First Amended Class Action Complaint. [Docket No. 31] The Court heard oral argument on June 24, 2021.

## II. BACKGROUND

### A. Factual Background

1

Defendant Total Life Changes, LLC ("TLC") is a Michigan-based company that develops and sells consumer health and wellness products. (First Amended Complaint ("FAC") ¶¶ 11, 17.)

Plaintiff Marilyn Williams is an Alabama resident who resided in Minnesota from June 2019 to September 2020. (FAC ¶¶ 9-10.) In June 2019, Williams moved to Minnesota to pursue an employment opportunity. (Id. ¶¶ 10. 61.)

In June 2020, Williams discovered TLC's Iaso Raspberry Lemonade Tea Instant ("Tea"), which TLC advertised as hemp tea that aids in weight loss. (FAC ¶¶ 2, 33-37, 47, 58.) She knew that she was subject to random drug testing at work, so she wanted to purchase a product that would not cause her to fail a drug test. (Id. ¶ 41.)

In June 2020, Williams "began corresponding with Emily Roberts, a Regional Director for TLC" about her interest in purchasing TLC products. (FAC ¶ 40.) She told "Roberts that her job conducted random drug tests and, accordingly, Plaintiff wanted a product that would not cause her to fail a drug test. (Id. ¶ 41.) Roberts "recommended that Plaintiff purchase [the Tea]" since 'there is no [tetrahydrocannabinol ("THC")] in raspberry.'" (Id. ¶ 42.) Williams

2

then purchased one bag of the Tea and one box containing Resolution Drops and Life Drops. (Id. ¶43.) She received the products in the mail. (Id. ¶ 46.)

The package of Tea that Williams received in the mail stated on the front: "0.0% THC." (FAC ¶ 46.) On the back, it stated: "This proprietary formula is powered by 100 mg of organic Broad-Spectrum Hemp Extract with 0% laboratory certified THC content." (Id. ¶ 47.)

TLC sells its Tea on its website. (FAC ¶ 34.) The website has a badge stating: "100% Authentic Guaranteed." (Id. ¶ 36.) The website also states: "This proprietary formula is powered by 100mg of organic Broad Spectrum Hemp Extract with 0% laboratory certified THC content." (Id. ¶ 37.)

Williams relied on TLC's representations that the Tea contained 0.0% THC and began consuming the Tea daily, beginning on July 12, 2020. (FAC ¶ 48.) On July 15, 2020, Williams' employer subjected her to a random drug test. (Id. ¶ 49.) Her employer told her that she failed the drug test because it came back positive for THC. (Id. ¶ 50.)

On July 20, 2020, Williams' employer terminated her for failing her drug test. (FAC ¶ 61.) She lost her income and was forced to move back to Alabama in September 2020. (Id.)

3

On July 20, 2020, Williams contacted Roberts, told her that her employment drug test came back positive for THC, and asked Roberts what was in the Tea. (FAC ¶¶ 51-52.) Roberts confirmed that the Tea did not have THC and sent Williams a TLC marketing brochure stating that the Tea was 100% "THC Free" and represented that "[t]his means you won't have to worry if your occupation requires regular drug-screening tests." (Id. ¶¶ 53-59.) "Roberts assured [her] that Defendant has 'military and fire and cops' as well as 'government' and 'health care workers' who have used the product and that there had been 'no issues' with positive drug tests." (Id. ¶ 60.)

Williams purchased an at-home marijuana drug test kit and tested a serving of the Tea, which came back positive for THC. (FAC ¶¶ 63-64.) On August 9, 2020, she purchased a sample pack of the Tea from TLC and tested a serving of the tea from that package with the at-home marijuana drug test kit. (Id. ¶¶ 66-67.) That Tea sample also tested positive for THC. (Id. ¶ 68.)

Williams also alleges that, in May 2020, a month before Williams purchased the Tea, a customer posted a negative review on the Better Business Bureau's TLC webpage stating that she was fired after the Tea caused her to fail a

DOT drug test due to the presence of THC in the Tea. (FAC ¶¶ 69-72.) TLC has not issued a recall of its Tea. (FAC ¶ 75.)

### B. Procedural History

On November 6, 2020, Williams commenced an action against TLC in Minnesota state court. ([Docket No. 1] Notice of Removal ¶ 1.) On December 3, 2020, TLC removed Williams' Complaint to this Court based on diversity jurisdiction and under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (Id. ¶ 5.)

On February 24, 2021, Williams filed a First Amended Class Action Complaint ("FAC") against TLC alleging: Count 1: Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.68 et seq.; Count 2: Minnesota Unlawful Trade Practices Act ("MUTPA"), Minn. Stat. § 325D.09, et seq. via Minn. Stat. § 8.31, subd. 3A; Count 3: MUTPA, Minn. Stat. § 325D.09, et seq.; Count 4: Minnesota False Statements in Advertising Act ("MFSAA"), Minn. Stat. § 325F.67; Count 5: Fraud by Omission; and Count 6: Unjust Enrichment. Counts 1, 2, and 4 are brought under the Minnesota Private Attorney General statute. Minn. Stat. § 8.31, subd. 3a. Plaintiff seeks to represent the following class:

> All persons who within the last six years of the filing of this complaint: (1) purchased Raspberry Lemonade Flavored Iaso Tea

5

Instant from Defendant or Defendant's Life Changers; (2) while residing in Minnesota; (3) for personal use and not for resale.

(FAC ¶ 78.)

Plaintiff seeks compensatory damages, restitution, penalties, a permanent injunction "enjoining Defendant from continuing the unlawful, unjust, unfair, and deceptive acts and practices described herein," and "[s]uch other further relief that the Court deems just and equitable." (FAC at 23.)

Defendant now moves to dismiss the FAC in its entirety.

## III.  DISCUSSION

### A.  Motion to Dismiss Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers the complaint and "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings. For example, courts may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citations omitted).

### B. Minnesota Statutory Claims Brought under the Minnesota Private Attorney General Statute

The Minnesota Private Attorney General statute states:

> In addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court. . . .

Minn. Stat. § 8.31, subd. 3a. The statute "advances the legislature's intent to prevent fraudulent representations and deceptive practices with regard to consumer products by offering an incentive for defrauded consumers to bring claims in lieu of the attorney general." Ly v. Nystrom, 615 N.W.2d 302, 311 (Minn. 2000). As such, a private plaintiff proceeding under this provision must

demonstrate that her action "protect[s] <u>public</u> rights in the interest of the state." <u>Id.</u> at 314.

### 1. Minnesota Residency

The Court holds that Plaintiff has standing to assert the statutory claims brought under Minnesota's Private Attorney General Act, although she is not currently a Minnesota resident. Based on the FAC, Williams was a Minnesota resident at the time her claims arose, she received the alleged misrepresentations in Minnesota, and she was injured in Minnesota. The Minnesota Private Attorney General Statute states that "any person injured by a violation of any of the laws referred to in subdivision 1 [including MUTPA, and laws against false or fraudulent advertising] may bring a civil action." Minn. Stat. § 8.31, subd. 3a. Here, Plaintiff has stated a claim for violation of the underlying Minnesota consumer statutes for injuries she incurred in Minnesota while she was a Minnesota resident. Therefore, she has standing to assert those claims through the Private Attorney General Statute whether or not she is currently a Minnesota resident.

## 2. Benefit to the Public

The Private Attorney General Act provides for private remedies and "applies only to those claimants who demonstrate that their cause of action benefits the public." Ly, 615 N.W.2d at 314. In evaluating public benefit, courts consider: "(1) the degree to which the defendant's alleged misrepresentations affected the public; (2) the form of the alleged representation; (3) the type of relief sought; and (4) whether the alleged misrepresentations are ongoing." Knotts v. Nissan N. Am., Inc., 346 F. Supp. 3d 1310, 1328 (D. Minn. 2018) (citation and omitted). The Court holds that, here, Plaintiff's claims benefit the public.

### a) Effect on the Public

The alleged misrepresentations affected the public in Minnesota, as they appeared on TLC's website and on Tea product packaging sent to more than 600 Minnesotans. ([Docket No. 5] Licari Decl. ¶ 4.) The representations appearing on the website, on product packaging, and in marketing materials do not vary based on consumers' interactions with TLC's business representatives.

### b) Form of the Alleged Representation

The alleged misrepresentations that the Tea contained no THC appeared in standardized advertising to the public on TLC's website, on the Tea's product

9

packaging, and in TLC's written brochures. (Plaintiff additionally alleges individualized representations made to her by Roberts, but these representations are in addition to and consistent with the aforementioned standardized representations.) "Misleading advertising to the general public supports a finding that a claim benefits the public. . . ." McDougall v. CRC Indus., Inc., No. 20-1499 (JRT/LIB), 2021 WL 810635, at *7 (D. Minn. Mar. 3, 2021) (citation omitted). See also Collins v. Minn. School of Business, Inc., 655 N.W.2d 320, 330 (Minn. 2003).

### c) Type of Relief Sought

Williams seeks both damages and injunctive relief that would remedy Defendant's misrepresentations for past and future consumers. (FAC at 23.) She points out that, in the absence of a recall or other notice, not only could other putative class members and other consumers purchase the Tea in the future without knowing its true THC content, but past purchasers are also likely to continue to suffer harm from their current inventory of the Tea.

Regardless of whether Plaintiff's injunctive relief claims survive, her statutory claims for damages would benefit the public by reimbursing those misled and making TLC less likely to make the same misrepresentations to the

public in the future. See, e.g., Khoday v. Symantec Corp., 858 F. Supp. 2d 1004, 1017 (D. Minn. 2012) ("Plaintiffs have alleged a public benefit even though this action seeks only money damages. Money damages may benefit consumers through providing compensation and a deterrent effect, and the plain language of the Private AG Statute allows for this type of recovery.") (citations omitted).

### d) Whether the Alleged Misrepresentations Are Ongoing

According to the FAC, TLC's alleged misrepresentations are ongoing – it continues to represent that the Tea has no THC, and there has been no product recall.

The Court concludes that all four factors weigh in favor of finding a public benefit.

### C. MUTPA Claim

Count 3: MUTPA, survives "[b]ecause the MUTPA provides a private cause of action, [so] a plaintiff may pursue relief directly under the statute." Johnson v. Bobcat Co., 175 F. Supp. 3d 1130, 1140 (D. Minn. 2016) (citing Minn. Stat. § 325D.15). MUTPA states that "[a]ny person damaged or who is threatened with loss, damage, or injury by reason of a violation of sections 325D.09 to 325D.16 shall be entitled to sue for . . . injunctive relief . . . and for the

amount of the actual damages, if any." Minn. Stat. § 325D.15. It is a violation of the MUTPA to "knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin" of merchandise. Minn. Stat. § 325D.13.

The direct MUTPA claim brought in Count 3 states a claim upon which relief may be granted, because Plaintiff alleges that TLC knowingly misrepresented the ingredients in the Tea to her while she was a Minnesota resident, causing damage to her while she was a Minnesota resident.

### D. Injunctive Relief

#### 1. Future Irreparable Harm

In order to obtain injunctive relief under Minnesota statutes, a plaintiff must prove irreparable injury. Buetow v. A.L.S. Enterprises, Inc., 650 F.3d 1178, 1185 (8th Cir. 2011). "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).

The FAC alleges it is "likely that, without the legal and equitable relief requested below, Plaintiff as well as hundreds more Minnesota residents have fallen and/or may continue to fall victim to Defendant's deceptive and misleading advertising." (FAC ¶ 93.) Although Plaintiff now believes that the Tea she purchased contained detectable amounts of THC, she has no way of knowing if future Tea sold by TLC will contain THC. Without an injunction, Williams or other putative class members might assume that TLC's continued representations that the Tea contains no THC indicate that TLC has eliminated THC from the Tea and be deceived into purchasing a THC-laced product. See, e.g., Hudock v. LG Elecs. U.S.A., Inc., No. CV 16-1220 (JRT/FLN), 2017 WL 1157098, at *6 (D. Minn. Mar. 27, 2017) (denying motion to dismiss when plaintiffs stated that "there is no way for them to know when or if Defendants have ceased misrepresenting the refresh rates of LG televisions" and that the plaintiffs were "in danger of being harmed again" because they "remain in the market for televisions"). Williams plausibly argues that an injunction is not only necessary to prevent Minnesota consumers from buying the product again but also to warn consumers who previously purchased the Tea in Minnesota about their past purchases that might still cause future harm. See also Ferrari v. Best

Buy Co., No. CIV. 14-2956 MJD/FLN, 2015 WL 2242128, at *10 (D. Minn. May 12, 2015) (holding that it was "premature to dismiss Plaintiff's claim for injunctive relief" at the motion to dismiss phase because "Plaintiff should be allowed to conduct discovery to attempt to uncover evidence showing that he may be harmed in the future by Best Buy's alleged misrepresentations").

### 2. Minnesota Residency

The Court rejects TLC's assertion that Plaintiff's Minnesota statutory claims for injunctive relief fail because she is not currently a Minnesota resident. Generally, Minnesota consumer statutes do not apply extraterritorially, which means that they "may be applied only to conduct that occurred in Minnesota." See Johannessohn v. Polaris Indus., Inc., 450 F. Supp. 3d 931, 966 (D. Minn. 2020).

Here, Plaintiff received TLC's alleged misrepresentations while she was in Minnesota, purchased the Tea in Minnesota, consumed the Tea in Minnesota, and was injured in Minnesota, all while she was a Minnesota resident. All of Plaintiff's claims are based on conduct that occurred in Minnesota while she was a Minnesota resident. TLC's misrepresentations allegedly caused her to lose her job and, thus, forced her to move away from Minnesota. Although Plaintiff is currently an Alabama resident, Alabama has no connection to the events in this

lawsuit. There would be no basis to apply Alabama consumer protection law. At this early stage of litigation, the Court concludes that Williams has pled a plausible claim for injunctive relief under the Minnesota statutes because Williams has pled past violations of the Minnesota statutes, she was forced to leave Minnesota due to TLC's actions and it is not clear that she does not wish to return to Minnesota where she could be harmed again, and she alleges that other Minnesotans will be harmed in the future if injunctive relief does not issue.

### E. Fraud by Omission

The Court holds that Williams has adequately pled a claim for fraud by omission by alleging that TLC had special knowledge regarding the THC levels in its Tea based on its laboratory analysis of the Tea, that she did not have access to that knowledge, and that TLC failed to share that knowledge with Plaintiff and other consumers. (FAC ¶ 120.)

"[F]or an omission to be actionable, it must be material to the transaction, and the party concealing the fact must have been under a legal or equitable obligation to communicate the fact to the other party." Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp., 850 N.W. 2d 682, 695 (Minn. 2014) (citations omitted). "Under the common law, one party to a transaction has no duty to disclose material facts to the other party" absent

15

special circumstances that may trigger a duty to disclose. Id. Those special circumstances may include situations where (1) the parties are in a confidential or fiduciary relationship, (2) one party "has special knowledge of material facts to which the other party does not have access," and (3) "a person who speaks must say enough to prevent the words communicated from misleading the other party." Id. If "one party has special knowledge of material facts to which the other party does not have access, . . . concealment is fraudulent if a party conceals a fact material to the transaction and peculiarly within its knowledge, knowing that the other party acts on the presumption that no such fact exists." Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc., 450 F.3d 816, 821 (8th Cir. 2006).

Williams claims that TLC owed her a duty to disclose the falsity of its statements because it had special knowledge of material facts to which she did not have access. Specifically, "Defendant was in a superior position to know the true facts about the contents of [the Tea] and to know that the product in fact contained THC in direct contradiction to Defendant's product label and marketing materials, including because Defendant was in possession of laboratory analysis of the Tea and Defendant was put on notice that other

consumers had tested positive for THC after consuming the tea." (FAC ¶ 120.) "[C]ourts in this District have allowed fraudulent concealment claims to go forward with allegations similar to those here [where a buyer alleges that a seller had special knowledge of defects in its product]." Sadeghi-A v. Daimler Trucks N. Am. LLC, No. 19-CV-2373 (MJD/ECW), 2021 WL 856919, at *15 (D. Minn. Mar. 8, 2021). The motion to dismiss the fraud by omission claim is denied.

### F. Unjust Enrichment

The Court denies Defendant's motion to dismiss the unjust enrichment claim because, as permitted by the Federal Rule of Civil Procedure 8, this Court routinely allows plaintiffs to plead unjust enrichment in the alterative at this stage of the litigation. See, e.g., United States v. R.J. Zavoral & Sons, Inc., 894 F. Supp. 2d 1118, 1127 (D. Minn. 2012).

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

> Defendant Total Life Changes, LLC's Motion to Dismiss the First Amended Class Action Complaint [Docket No. 31] is **DENIED**.

Dated: June 24, 2021         s/Michael J. Davis
                             Michael J. Davis
                             United States District Court